**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LISA ANNE-MARIE PARKER, | ) |
| | ) Case No. 1:26-cv-03012 |
| Plaintiff, | ) |
| | ) Judge Jorge L. Alonso |
| v. | ) |
| | ) Magistrate Judge Daniel P. McLaughlin |
| THE PARTNERSHIPS AND | ) |
| UNINCORPORATED ASSOCIATIONS | ) |
| IDENTIFIED ON SCHEDULE "A", | ) |
| | ) |
| Defendants. | ) |

**REPLY**

HAQUIL (Def. #4), by and through its undersigned counsel, files this reply in support of its motion to dismiss the Complaint pursuant to Rule 12(b)(1) and/or 12(b)(2) and for an award of its reasonable attorneys' fees (the "Motion to Dismiss"), and in further support thereof, states as follows:

**SUMMARY**

- Plaintiff has not presented the Court with any evidence of an actual sale of an allegedly infringing product to a "customer" located in the State of Illinois.

- The 3-D Dragon Pendant sold by Defendant is substantially different in form and detail from the Plaintiff's 2-D Dragon Illustration of a dragon sitting on a moon.

- Joinder of claims against HAQUIL with the Plaintiff's claims against the other, unrelated Defendants listed on Schedule A, was impermissible and is not mooted simply because Plaintiff "got away with it".

- Plaintiff's damages, if liability could be found, would be limited to the amount of Defendant's net profits of $1,005.

    **A.**    **Plaintiff has Not Presented this Court with Evidence that Establishes Personal Jurisdiction over HAQUIL.**

Courts in this District apply a strict standard to establish the exercise of personal jurisdiction over foreign defendants in "Schedule A" cases. *See e.g.*, *Davis v. The Entities Listed*

1

*on Exhibit 1*, Case No. 23-10799, at p.1 (N.D. March 31, 2026), a copy of which is attached as Exhibit A (dismissing defendants without evidence of actual sales of the allegedly infringing products to customers in the State of Illinois, and denying dismissal as to all other defendants). As the court in *Davis* noted, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Id.*, at p.5 (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). The court also noted that maintaining an interactive website alone does not establish personal jurisdiction over a defendant. *Id.*, at pp.5-6. The mere ability to sell and ship products to Illinois is not enough. *Id.* Before the court can exercise personal jurisdiction over a foreign defendant, plaintiff must present evidence of the existence of an actual customer of the defendant located in Illinois; a "customer" is someone who actually completed the purchase of a product from the defendant establishing that the defendant "knowingly *did do business* with Illinois residents." *Id.*, at p.6 (emphasis added). The theoretical possibility of a sale is not enough. *Id.*

The court's analysis of personal jurisdiction in *Davis* is consistent with this Court's analysis in the Order entered in *Comish v. The Partnerships and Unincorporated Associations Identified on Schedule A*, Case No. 7049, at p.3 (N.D. Ill. Jan. 12, 2026), a copy of which was attached to the Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (the "Response") (Dkt. #38), as Exhibit 4. In *Comish*, this Court recognized that "'[c]ourts in this District'—including this Court— 'agree that in infringement cases like this the online retailer generally must have sold at least one product in Illinois for personal jurisdiction to exist here.'" (quoting *Roblox Corp. v. Bigfinz*, No. 23 C 5346, 2023 WL 8258653, at *1 (N.D. Ill. Nov. 29, 2023)). Without at least one sale and shipment to Illinois, courts typically reason, there is no basis to conclude that an online retailer "purposefully directed its activities" at Illinois. *Id.* (citing *Collectanea J. Ltd. v. P'ships &*

2

*Unincorporated Ass'ns Identified on Schedule A*, No. 24 C 3821, 2024 WL 4604532, at *4 (N.D. Ill. Oct. 29, 2024) (citing *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022)). The personal jurisdiction may be appropriate in this District where "an online retailer structured its activities to target Illinois when it communicated with a 'would-be buyer' in Illinois by confirming that it would ship its products to Illinois, gave a specific price for shipping costs to Illinois, and *sent an invoice reflecting the same*". *i.e.*, an actual sale was completed. *Id.* (citing *BRABUS GmbH v. Individuals Identified on Schedule A Hereto*, No. 20-CV-03720, 2022 WL 7501046, at *3 (N.D. Ill. Oct. 13, 2022)). Put another way, if the potential customer did not complete a sale from the defendant, he is not a "customer" of the defendant's, and the exercise of personal jurisdiction over the defendant is not appropriate.

In *Comish*, the Defendant sold, then cancelled the sale of, three orders to three "customers" located in Illinois. *See Comish*, at p.3. A product was offered for sale, the defendant had the ability to ship to Illinois, and a "customer" located in Illinois actually *paid the invoice generated by the defendant*. In short, an actual sale was made to a "customer" of the defendant located in Illinois.

In this Case, Plaintiff has not provided the Court with any evidence that someone located in Illinois paid HAQUIL for an allegedly infringing product. In other words, like the dismissed defendants in *Davis*, and contrary to the defendants in *Comish*, there is no evidence in this Case of an actual "customer" of HAQUIL located in the State of Illinois, and the Motion to Dismiss must be granted based the Plaintiff's failure to establish personal jurisdiction over HAQUIL in this District.[1]

---

[1] Plaintiff's argument for FRCP 4(k)(2) is unavailing since Plaintiff could have filed a lawsuit against HAQUIL in any U.S. jurisdiction where HAQUIL actually sold allegedly infringing products, even applying the standard imposed in this District. *See* Response, at p.5.

**B.**  **The 3-D Dragon Pendant is Markedly Different than the 2-D Dragon Illustration that is Covered by Plaintiff's Copyright.**

Plaintiff concedes its Dragon Illustration and the Dragon Pendant are different in form and appearance: the Dragon Illustration is a 2-D work; the Dragon Pendant is a 3-D sculpture. The specific, objective differences between the two images is fully set forth in the Motion to Dismiss, are not disputed by Plaintiff, and need not be repeated here. To be clear, however, HAQUIL did not design the Dragon Pendant. HAQUIL did not have access to and never viewed the Plaintiff's Dragon Illustration. HAQUIL simply saw a pendant being sold on a website, that it thought might be marketable, and advertised that product on its website with no knowledge that the Plaintiff claimed a copyright covered covering a 2-D image of a dragon sitting on a moon. Plaintiff does not contest these objective differences in her Response. Therefore, even if the Court found that Plaintiff established jurisdiction over HAQUIL, the Plaintiff's claim against HAQUIL would fail on the merits.

**C.**  **Eliminating the Non-Responding Defendants Only Proves that Joinder of HAQUIL with the Other Defendants was Improper.**

Simply "getting away with" misjoinder of defendants based on procedural happenstance does not disregard the procedural requirement of Rule 20 of the Federal Rules of Procedure. *See Price v. The Individuals and Unincorporated Associations Identified on Schedule A*, 2026 WL 470599, at *12 (N.D. Ill. Feb. 19, 2026) (vacating temporary restraining order that had been entered and extended base on procedural and structural problems, including misjoinder). Despite the procedural and structural issues that often arise in "Schedule A" litigation, they "often evade review" because plaintiffs dismiss defendants who raise such issues in an effort to "moot" those issues by obtain default judgements against non-responding defendants. *Id.*, at **2, 12.

In this Case, Plaintiff alleged that the "Defendants' illegal operations arise out of the same

4

transaction, occurrence, or series of transactions or occurrences." Compl., at ¶7. Plaintiff obtained default judgments against the Defendants listed on Schedule A that failed to file an appearance or respond to the Complaint. These Defendants had no relation to HAQUIL (or, likely, to each other), and joining Plaintiff's claims against HAQUIL with the claims of the other Defendants was improper. Plaintiff's willingness to resolve her claims against all of the other Defendants – and treat her unrelated claim against HAQUIL separately – only underscores the procedural and structural problems that Plaintiff is now claiming are moot. This Court has the inherent authority to revisit the procedural shortcomings of its prior orders, and should dismiss the Plaintiff's claims against HAQUIL for her (admitted) abuse of procedural requirements.

### D. Any Damages must be Limited to Defendant's Net Profits from the Sales of the Allegedly Infringing Product.

Even if the Court chooses to disregard the jurisdictional and procedural defects of Plaintiff's claims against HAQUIL, any damages awarded against HAQUIL must be limited to net profits based on the Plaintiff's request for equitable relief and under the controlling precedent set forth in *NBA Properties* and *Groupo Mexicano de Dessarrolo v. Alliance Bond Fund*, 527 U.S. 308, 333 (1999).

This identical issue was litigated by the same attorneys representing the Plaintiff and Defendant in a previous Schedule A case in this District: *Pink Floyd (1987) Limited v. The Partnerships and Unincorporated Associations Identified on Schedule A*, Case No. 24-7323 (N.D. Ill.) (Pacold, J.), and the severed case *Pink Floyd (1987) Ltd. v. Parthimpex*, Case No. 24-7323 (N.D. Ill.) (Hunt, J.). The attorneys for the plaintiff in *Pink Floyd* made the same arguments regarding damages that they appear to be making now, *i.e.*, that they are entitled to choose statutory damages after initially requesting equitable relief. *See* Compl., at ¶22 ("Plaintiff is entitled to injunctive relief."). Defendant in *Pink Floyd*, Parthimpex, argued that any monetary damages

5

based on requested equitable relief is limited to the defendant's net profits (or the theoretical cost of a licensing agreement) under *Grupo Mexicano*.

Specifically, in the *Pink Floyd* case, the plaintiff obtained an *ex parte* asset restraint of Defendant Parthimpex's online account in the amount of $62,000. Parthimpex filed a motion to reduce the amount of the asset restraint to the amount of Defendant's net profits, which were $4,531, relying primarily on the controlling precedent set forth in *Group Mexicano*. *See* Defendant Parthimpex's Reply in Support of its Emergency Motion for Modification of the Asset Restraint and Opposition to Preliminary Injunction filed in *Pink Floyd*, Case No. 24-7323, at Dkt. 27, a copy of which is attached as Exhibit B. Parthimpex contended that the amount of the asset restraint sought by the plaintiff was limited to the amount of damages that the Plaintiff could recover: net profits from the sale of the allegedly infringing product. *Id.*, at pp.2-3. Parthimpex argued that the limit on the asset restraint was limited to what the plaintiff could recover citing the United States Supreme Court's holding in *Grupo Mexicano*, 527 U.S. at 333, which was confirmed by the Seventh Circuit in *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002); *Micnerski v. Sheahan*, 2002 WL 31415753, at *1 (N.D. Ill. Oct. 25 2002) ("federal district courts do not have the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed").

Judge Martha M. Pacold granted Parthimpex's motion stating in a minute order:

> Defendant parthimpex's emergency motion for modification of the asset restraint [27]. The Court is in receipt of Defendant parthimpex's Reply in Support of its Emergency Motion for Modification of the Asset Restraint and Opposition to Preliminary Injunction. Devendra Gupta, manager of parthimpex, appears to provide testimony. The Court heard the parties' oral arguments, and for all the reasons stated on the record, the motion as it relates to asset modification is granted and the asset restraint is reduced to $4,531.

*Id.*, at Dkt. 36.

6

Despite Judge Pacold's decision, plaintiff in *Pink Floyd* continued to demand more than $10,000 to settle the claim against the defendant, an individual located in India. The case was eventually severed, and the parties agreed to submit the dispute to a settlement conference and the parties settled the matter for an amount slightly above the defendant's net profits. Therefore, the outcome in this Case should be the same: damages, if awarded at all, should be limited to the amount of the Defendant's net profits: $1,005.

If no damages are awarded against HAQUIL, it is entitled to its reasonable attorneys' fees and costs as the "prevailing party". Plaintiff does not argue otherwise. *See* Response, at p.12 (HAQUIL "is not a prevailing party *at this time*.") (emphasis added).

**WHEREFORE**, HAQUIL requests that this Court enter an order (i) dismissing the case against it, (ii) awarding HAQUIL its reasonable costs and attorneys' fees, and (iii) granting such other and further relief as the Court deems necessary under the circumstances.

Respectfully submitted,

By:    /s/ Patrick M. Jones
Patrick M. Jones
Counsel for HAQUIL (Def. #4)

**PMJ PLLC**

Patrick M. Jones (IL #6271256)
332 South Michigan Avenue
Suite 121, #5413
Chicago, Illinois 60604
Tel: (312) 404-3225

and

7508 South 76th Drive
Laveen, AZ. 85339
E-mail: pmj@pmjpllc.com

7

## CERTIFICATE OF SERVICE

A copy of the foregoing was served on all counsel of record via the Court's electronic filing system on May 26, 2026.

/s/ Patrick M. Jones